# CHARLESTON.

RAVENCLIFF DEVELOPMENT COMPANY *v.* PERRY LAFFERTY

(No. 5923)

Submitted April 26, 1927.      Decided May 3, 1927.

1.   CONTRACTS—*Act Occasioning Promisee Slightest Trouble or
     Inconvenience, Moved by Promisor's Promise, Constitutes
     "Valuable Consideration."*

     If the promisee, at the instance of the promisor and moved
     by his promise, do any act which occasions him even the
     slightest trouble or inconvenience, or in doing which he in-
     curs a risk, the act so performed constitutes a valuable con-
     sideration for the promise.   (p. 542).

         (Contracts, 13 C. J. § 150.)

2.   SPECIFIC PERFORMANCE—*If Terms of Continuing Contract Are
     as Sworn to by One Party and in Accord With Reasonable
     Construction Placed Thereon by Parties Through Long
     Usage, Evidence Warrants Decree of Specific Execution.*

     If the terms of a continuing contract, relied on, be as
     sworn to by one of the parties and in accord with the practi-
     cal and reasonable construction placed upon them by the par-
     ties by long usage, they will be regarded as sufficiently definite
     and certain as to warrant a decree of specific execution in ac-
     cordance therewith.   (p. 542).

         (Specific Performance. 36 Cyc. p. 789.)

3.   INJUNCTION—*Gas Company Will be Enjoined From Turning
     Off Gas Furnished Under Contract.*

     In a proper case an injunction will be granted to restrain
     a gas company from turning off a supply of gas furnished un-
     der contract.   (p. 544).

         (Injunctions, 32 C. J. § 349.)

         (NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not
         part of syllabi.)

HATCHER, PRESIDENT, absent.

Appeal from Circuit Court, Wyoming County.

Suit by the Ravencliff Development Company against Perry Lafferty for injunction. From a decree for defendant, plaintiff appeals.

*Affirmed.*

*Toler & Shannon* and *Price, Smith & Spilman* and *Hawthorn-Battle*, for appellant.

*E. W. Worrell*, for appellee.

MILLER, JUDGE:

In 1910, one Hugh P. Brooks, being the owner in fee of a tract of 137 acres of land, conveyed to the defendant Perry Lafferty 23 acres of the ''surface'' thereof, and in 1915, conveyed to C. H. Mead ''all of the coal, mineral, oil, and gas, with mining rights and rights of way, on, under and to'' the 137-acre tract. Mead then conveyed to the Milams Fork Smokeless Coal Land Company the minerals and mineral rights so acquired by him in the said tract. In 1924, the said coal land company, jointly with the Wyoming Pocahontas Coal and Coke Company, leased to the plaintiff about 30,000 acres of their mineral holdings, including the 137-acre tract, for the purposes of developing the oil and gas therein. At the time this lease was made there was a producing gas well on the larger tract, about 1500 to 2000 feet from the 137 acres and the 23-acre tract.

After acquiring the lease, the plaintiff entered into a contract with the Faith Smokeless Coal Company, to furnish gas for use in the operation of its mining plant, situated some two miles distant from the gas well. Defendant's 23-acre tract lies directly between the well and the coal company's plant; and in order to obtain the best location for a pipe line from the well to the coal operation, it was considered necessary to cross this tract. It was proposed to lay a three-inch pipe line on top the ground. Defendant objected, and asked for free gas in consideration for the right to lay the line. W. G. Mead, in charge of laying the line for the plaintiff, told defendant that he would call up the coal company's office and ascertain

if the company would give him free gas. The next day, in the presence of a number of witnesses, when defendant was passing the plant of the Faith Smokeless Coal Company, Mead called to him and asked what he had decided to do about the pipe line; and he answered: "Well, I have decided it won't cost me a penny for you to go around. You can go around." According to defendant and two or three other witnesses who testified in the cause, Mead then said, "Well, we are going to let you have free gas;" to which defendant replied, "All right."

Plaintiff laid the line across defendant's land, with a "T" or connection, and a reducing valve, near his home, to enable him to obtain the gas contemplated by the contract. By the use of some pipe which he was able to secure in the neighborhood, defendant conveyed the gas to his residence, and after a little delay in securing the necessary additional pipe, he extended the line to his store, located somewhere in the 23-acre tract near his home.

About a year and a half later J. P. Nowlin, treasurer of the defendant company, in company with Mead, came to defendant's store, when for the first time, Nowlin objected to the use of gas in the store without remuneration, and insisted that defendant was to have free gas for his residence only. Defendant was told that he would have to pay for the gas used in the store, and a meter was suggested to measure the amount used. There is some conflict in the evidence as to who made the first threat, but defendant was told that if he did not pay for the gas, the company would have to cut off the supply; and defendant said that if the gas was cut off from his store, he would cut the main line running across his land.

By the present suit the plaintiff sought an injunction to restrain the defendant from executing his threats to tear up its pipe line and from interfering with or molesting the same. By way of defense and for affirmative relief the defendant, in his answer, prayed that plaintiff be enjoined from interfering with his use of gas in his store, according to his agreement with plaintiff at the time the pipe lines were laid.

Mead insists that the agreement was that defendant and his wife "should have gas for domestic use as long as either of

them should live or the well should produce in paying quantities.'' The defendant Lafferty says that nothing was said about gas for domestic use, and that it was understood he was to have gas in his store as well as in his residence, and that no such limit was placed on the use of free gas as is contended for by plaintiff. The plaintiff's officers admit that the contract, if valid, entitles defendant to gas for use in his residence.

First, plaintiff relies on the proposition that the owner of the mineral underlying a tract of land has a right, as incident to such ownership, to use the surface in such manner as may be necessary for the enjoyment of the mineral estate, and that equity will not enforce the performance of a duty imposed by law. This is not a suit for specific performance of a right arising from implication of law. It is admitted that the parties entered into a contract. The contract being admitted, it is not necessary to inquire into the reason why the parties entered into it, since the plaintiff laid its line pursuant thereto and has been furnishing defendant gas thereunder. We can not say that they did not consider the maintenance of a three-inch pipe line on top of the surface of defendant's agricultural land, or the conveyance thereover of gas coming from other lands a sufficient consideration for the right of way, for there is no certainty that gas exists under the defendant's land. For reasons known only to them, the parties entered into the contract, and each had fully performed as far as could be done to the time the dispute arose. Little is required in the way of consideration to make a contract valid and enforceable. ''If the promisee, at the instance of the promisor and moved by his promise, do any act which occasions him even the slightest trouble or inconvenience, or in the doing of which he incurs a risk, the act so performed constitutes a valuable consideration for the promise.'' *County Court* v. *Hall*, 51 W. Va. 269.

Plaintiff's next proposition is that equity will not specifically enforce a parol contract unless its terms are certain and clearly established, and that the same rule applies in a suit to enjoin the breach of such a contract. It is urged that the evidence in this case is not sufficient to establish defendant's

right to the relief granted by the decree appealed from. It is said that the most plaintiff proved as to the terms of the contract is that Mead told him: "We are going to give you free gas." In connection with the subsequent acts of the parties is not this enough? Plaintiff knowingly permitted defendant to use gas in his home, and assisted him in providing to convey it there. The contract being admitted, and the proof showing defendant was to have "free gas" for some purpose, the only question remaining is whether the contract entitles him to gas in his store. He insists that it does; Mead alone testifies that the free gas was to be for "domestic use."

Defendant fully complied with his part of the contract by permitting the plaintiff to lay the pipe line across his land, and the plaintiff furnished him with a connection and reducing valve. Within a month or six weeks after the main line was laid, as soon as defendant secured the pipe, he laid it to his house and started it towards his store. In a short time he obtained more pipe, by ordering it from an adjoining county, and completed the line to the store. The connection at the store was made shortly after the connection at the house. For a period of about eighteen months he used the gas in his store without objection on the part of anyone. Mrs. Lafferty, defendant's wife, testified that Mead was in the store two or three times after the gas was installed there, sat by the stove and "talked about the way it was fixed up." He denied that he knew the gas was being used there, or that he had been in the store, and says that he never had any connection with the plaintiff company except while he was employed by it to lay the line. But it appears that he became superintendent of the Faith Smokeless Coal Company about June 1925. The larger pipe line in controversy was laid in the fall of 1924, and defendant began using the gas in January, 1925. If Mead was in fact in defendant's store and saw the gas being used in the stove, in view of the fact that he made the contract with defendant, it seems reasonable to assume that he would have made some mention of that fact, if he did not understand defendant was to have gas in his store. And there was some duty on the plaintiff, one of the parties to the contract, to know how much and for what use it was furnishing gas to

defendant. He was using it openly in a room where the public came daily to transact business with him, and there is no evidence of any attempt to conceal his use of it. And he began using it as soon as he could convey it to his two buildings. The plaintiff is the party to the contract who seeks to restrict the meaning of the words used in the agreement. In view of this fact and the acts of the parties, we think the defendant is relieved of the burden of more certainly and clearly proving the terms of the contract under which both have been acting for a year and a half; and that it would be an injustice to him at this late date to permit the plaintiff because of alleged uncertainty of the agreement to deprive him of the further use of what he had considered all along was a part of the consideration for the right of way, when he has fully complied with the contract on his part. The evidence wholly fails to restrict the meaning of the terms used to that contended for by plaintiff.

It is said that the possible breach of a contract to supply free gas to a consumer affords no ground for equitable jurisdiction to prevent such a breach. While the term ''free gas'' seems to have been used by the parties, it is the consideration for the contract. An injunction will be granted to restrain a gas company from turning off a supply of gas furnished under contract. In such a case the relief is granted on account of the difficulty of accurately estimating the damages in an action at law, and it is not necessary that the injury itself should appear to be irreparable or the defendant insolvent. 2 High on Injunctions (4th ed.) sec. 112a; 6 Page on Contracts (2nd ed.) sec. 3389; *Conemaugh Gas Co.* v. *Jackson Farm Gas Co.*, 186 Pa. St. 443, 65 Am. St. Rep. 865; and the cases cited.

The decree will be affirmed.

*Affirmed.*